# In the United States Court of Federal Claims

No. 18-981

(Filed Under Seal:  November 26, 2018)

(Reissued:  December 6, 2018)

| | | |
|---|---|---|
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | ) | |
| **VETERAN SHREDDING, LLC**, | ) | Pre-award bid protest; challenge to |
| | ) | cancellation of a solicitation; standing; |
| Plaintiff, | ) | criteria applicable to delineating an |
| | ) | "interested party" after opening of bids but |
| v. | ) | before any award of a procurement |
| | ) | contract |
| **UNITED STATES**, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | ) | |

   Joseph A. Whitcomb and Mark H. Wilson, Whitcomb, Selinsky, McAuliffe, PC, Denver, Colorado, for plaintiff.

   Igor Helman, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Allison Kidd-Miller, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Natica Chapman Neely, Staff Attorney, District Contracting National Practice Group, Office of General Counsel, United States Department of Veterans Affairs, Jackson, Mississippi.

**OPINION AND ORDER[1]**

LETTOW, Senior Judge.

   Plaintiff Veteran Shredding, LLC ("Veteran Shredding") has protested the pre-award cancellation by the Department of Veteran Affairs ("VA") of a solicitation for document destruction services respecting which Veteran Shredding was one of five bidders.  Veteran Shredding requests that this court declare the cancellation to be arbitrary, capricious, or contrary to law, order the VA to award the contract to Veteran Shredding, enjoin the VA from re-

---

   [1]Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information.  The resulting redactions are shown by brackets enclosing asterisks, *e.g.*, "[\*\*\*]."

soliciting the procurement, and declare improper the VA's plan to resolicit using a veteran-owned small business ("VOSB") set-aside in place of the original service-disabled veteran-owned small business ("SDVOSB") set-aside.  Compl. at 12.

After the administrative record was filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"), Veteran Shredding filed its motion for judgment on the administrative record on September 17, 2018.  *See* Pl. Veteran Shredding, LLC's Mot. for Judgment on the Admin. R. ("Pl.'s Mot."), ECF No. 15.  The United States ("the government") responded in opposition on October 9, 2018.  *See* Def.'s Mot. to Dismiss, Cross-Mot. for Judgment on the Admin. R., & Opp'n to Pl.'s Mot. for Judgment on the Admin. R. ("Def.'s Cross-Mot."), ECF No. 17.  The government specifically challenged Veteran Shredding's standing to protest the cancellation of the solicitation.  Upon completion of briefing, *see* Pl.'s Reply to Def.'s Mot. to Dismiss & Cross-Mot. for Judgment on the Admin. R. ("Pl.'s Reply"), ECF No. 19; Def.'s Reply in Supp. of its Mot. to Dismiss & Cross-Mot. for Judgment on the Admin. R. ("Def.'s Reply"), ECF No. 20, a hearing was held on October 30, 2018.

This court concludes that Veteran Shredding lacks standing to pursue this bid protest.  Accordingly, the government's motion to dismiss the complaint for lack of jurisdiction is GRANTED.  The plaintiff's motion and government's cross-motion for judgment on the administrative record are both DENIED as moot.

## FACTS[2]

### A. *The 2018 Minneapolis VA Shredding Solicitation*

On February 12, 2018, VA issued a solicitation for document and media destruction services for the Minneapolis Veterans Affairs Healthcare System ("Minneapolis VA"), which operates seven locations in and around Minneapolis, Minnesota, and one location in nearby Wisconsin.  AR 52, 54, 122.[3]  The contract's base period would run for one year starting on April 1, 2018, with four subsequent one-year option periods.  AR 59-60.  VA advertised the solicitation as a commercial-item acquisition using the simplified acquisition procedures of Federal Acquisition Regulation ("FAR") Part 13.  AR 104.  The Minneapolis VA estimated that approximately 400,000 pounds of paper and 500 pounds of media would need to be disposed annually, AR 54, and the solicitation described each location involved along with the number and size of containers and the pick-up frequency, AR 122.  Offers were due by February 26, 2018.  AR 52.

---

[2]The following recitations constitute findings of fact by the court from the administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3]The Administrative Record is consecutively paginated, and citations to the record are cited by page as "AR ___."

VA proposed to award the contract to the lowest-priced technically acceptable offer. AR 52, 104. Bidders were required to provide separate quotes for the base year and each of the four option years. AR 59-60. Non-price factors consisted of technical ability and past performance, and were to be rated as either acceptable or unacceptable. AR 104. The solicitation specified a 100% SDVOSB set-aside. AR 52. Acquisition regulations required the contract awardee to perform at least 50% of the work. *E.g.*, AR 241.

The terms of the solicitation were based on VA's prior experience with shredding services in the Minneapolis area. In the four years prior to April 1, 2018, Shred-N-Go, Inc. provided the Minneapolis VA's document and media destruction services. AR 1. The solicitation for the 2014 contract had estimated that 356,000 pounds of paper and media would need to be destroyed annually, and required service at seven locations within and around Minneapolis. AR 15.[4] The 2014 solicitation was a 100% set-aside for small businesses. AR 1. Shred-N-Go's contract price was $96,360 for the base year (2014), and increased by exactly $3,000 each year in three sequential option years. AR 1, 15-18. Shred-N-Go's contract totaled $403,440 over four years. AR 1, 15-18.[5]

On September 20, 2017, VA prepared a "Request, Turn-In, and Receipt for Property or Services" form ("Request Form"), which allocated $[***] for "Shred-N-Go contract renewal [for] FY18" to start on April 1, 2018, presumably for an identical scope of work. AR 32-33. The Request Form listed contact information for the incumbent Shred-N-Go. AR 32. On September 21, 2017, a day after VA allocated funds for the shredding contract, the Assistant Chief of Environmental Management Services of the Minneapolis VA ("Assistant Chief") prepared a "Multi-Year Independent Government Cost Estimate (IGCE)." AR 34-35. The IGCE estimated $[***] for "[w]hite paper shredding and multi media destruction services" for one year beginning on April 1, 2018. AR 34-35. From this base, the projected annual cost increased by exactly [***]% per year for four sequential option years,[6] for a total of $[***] over five years. AR 34-35. The IGCE did not specify quantity, location, frequency, or destruction criteria. AR 34-35. From a list of possible bases, the "basis for the IGCE" was shown as only "past contract pricing;" other options such as "informal vendor quotes" and "other" were not selected. AR 35.

On September 22, 2017, after completing the IGCE, the Assistant Chief completed a "Market Research Worksheet for Customers" ("Worksheet"). AR 36-39. The Worksheet is a

---

[4] The 2018 solicitation did not disclose the quantity of materials Shred-N-Go had actually destroyed under the 2014 contract, either on an annual basis or cumulatively over a period of years.

[5] Shred-N-Go also bid $0.514 per pound of media destroyed for each of the four years. AR 15-18. This cost was not added to the total bid price nor reflected in the contract award price. AR 1, 15-18. With the solicitation's estimate of 300 pounds of media per year, AR 6, the incremental cost would amount to $154.20 per year. It is not specified whether Shred-N-Go was reimbursed for its actual cost of this service or whether it provided this service without additional charges.

[6] Annual estimate costs were increased by [***]% per year, rounded down to the nearest dollar. The rationale for using [***]% increase is not readily apparent from the IGCE.

3

standardized form and shows that the Minneapolis VA contacted three local document destruction companies: Shred-N-Go, Pro Shred, and Shred-It, AR 37, "[m]ainly . . . to know if they can handle a facility this size twice a week with a full service program," AR 38. No price quotes appear. AR 36-39. The Assistant Chief included one further narrative comment: "[b]ased on my research and interaction with our current [s]mall business *veteran owned* contractor[, *i.e.*, Shred-N-Go], I feel they have done an excellent job covering our needs." AR 38 (emphasis added). In actuality, Shred-N-Go is not veteran-owned. Def.'s Cross-Mot. App. at 1, 8-9 (Shred-N-Go's certification in the government's System for Award Management of February 13, 2018 represents that Shred-N-Go is a small business, but is not veteran-owned). Otherwise, Worksheet fields were left blank or contained cursory remarks, AR 36-39, apart from a notation that the scope of the work is "outlined in the SOW," AR 36, presumably referring to the "statement of work" that appears in the 2014 contract, *see* AR 6-9.

The timing of these steps is a mystery. Although $[***] for the first contract year was allotted on September 20, the Minneapolis VA did not complete its IGCE until the following day. And, although the Minneapolis VA prepared the IGCE on September 21, it did not finish market research until the following day.

A VA contracting specialist completed a "Simplified Market Research Report" on December 14, 2017. AR 40. The report identified 466 SDVOSB vendors nationwide that could potentially perform the contract, with 19 in Minnesota. AR 40. The Contracting Specialist determined to set-aside the contract for SDVOSBs. AR 40.

B.  *Responses to Solicitation and the Government's Evaluation*

The VA received five offers, all from SDVOSBs. *See* AR 337, 348, 357, 451-452, 551. The initial offer prices, cumulative of the base year and the four option years, ranged from approximately $[***] to $[***]. AR 624. Veteran Shredding offered the highest price among the initial offers. AR 624.

On February 27, 2018, the Contracting Specialist advised each of the five offerors to "take note of the previous contract [with Shred-N-Go] and provide [a] best and final quote" by the following afternoon. AR 625. Veteran Shredding responded with two "major concerns;" it found the estimated paper weight "unusually low" and questioned whether the incumbent was actually servicing the number of bins identified in the 2014 solicitation, as "at these numbers [Shred-N-Go] was doing this for a loss." AR 628. [***] also remarked that "the incumbent contractor . . . is probably losing money on this project, since its inception." AR 769. Finally, [***] provided a detailed defense of its pricing and remarked that "in comparison [to the prior contract] our pricing appears high," but that without information showing the actual number of bins serviced at each location, "the best we could do is make some conservative guesses which might lower our pricing." AR 771-72.

All five bidders responded to the call for best and final offers. [***] lowered its price to $[***]. AR 786, 858. [***] re-offered $[***]. AR 852, 858. Veteran Shredding lowered its price to $[***], AR 642, 858, making it now the third lowest bidder, AR 858. [***] re-offered $[***]. AR 624, 849, 858. [***] re-offered $[***]. AR 855, 858. The day after Veteran

Shredding submitted its revised bid, it again expressed to the Contracting Specialist that it believed the incumbent "grossly underestimated" the paper to be disposed and offered to justify its bid in detail.  AR 859.

### C. *Cancellation of the Solicitation & Veteran Shredding's Protest to GAO*

On March 1, 2018, the Contracting Specialist prepared a memorandum that analyzed the offers received.  AR 863.  He noted that "the lowest priced offer . . . is approximately [***]% above the IGCE," but the "only change [between the solicitation and the previous contract] was the inclusion of two alternate locations for pick-up[, which] would not . . . justify an [***]% increase in price."  AR 863.  "Based on the significant difference between the lowest priced offeror and the ICGE, [the offers] could not be determined to be [] fair and reasonable."  AR 863 (emphasis omitted).  Accordingly, he determined to cancel the original 100% SDVOSB solicitation and to re-issue a solicitation with a 100% VOSB set-aside.  AR 863.  That same day, the Contracting Specialist notified the five bidders that because their quotes were not fair and reasonable, the VA would cancel the solicitation and "open[] it up to additional competition."  AR 865.

Following the cancellation, [***] made a "formal request for either an oral or written debrief," AR 870, and Veteran Shredding also requested a debriefing, AR 874-75.[7]  These debriefings occurred on March 5, 2018, with both the Contracting Specialist and the Contracting Officer present.  AR 880-81.  According to the meeting summaries prepared by the Contracting Officer, the Contracting Specialist began the debriefings by notifying each bidder that since the solicitation occurred under FAR Part 13, the debriefing was not a formal debriefing.   AR 880-81.

On March 15, 2018, Veteran Shredding filed a protest with the Government Accountability Office ("GAO").  AR 883.  On June 4, 2018, GAO dismissed the protest as untimely.  AR 1123.  GAO held that because the procurement did not require a debriefing, the 10-day window for filing a protest commenced on March 1, 2018, when Veteran Shredding received the notice of cancellation.  AR 1124-25.

Eight days after GAO's dismissal, and five days after Veteran Shredding filed a bid protest pre-filing notice, the Contracting Officer gave acceptable technical ratings in the now-cancelled solicitation to Veteran Shredding's proposal and the two lower priced proposals.  AR 1127-29, 1163-65, 1202-04; *see also* Def.'s Cross-Mot. at 8.  The record does not show whether the Contracting Officer gave technical ratings to the two higher-priced proposals.

The VA has yet to resolicit the contract.  Def.'s Reply at 6 & n.3.

## JURISDICTION

The Tucker Act, 28 U.S.C. § 1491, vests this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a [f]ederal agency for bids or

---

[7]Additionally, [***] later reiterated its concerns that without historic data, it was difficult to understand the scope of the work and bid appropriately.  AR 866.

proposals for a proposed contract or to a proposed award or . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

A threshold issue is whether Veteran Shredding, the third lowest bidder on the cancelled solicitation, has standing to challenge the cancellation. Veteran Shredding, as plaintiff, bears the burden of establishing standing. *See, e.g.*, *Myers Investigative & Sec. Servs. Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To demonstrate standing under 28 U.S.C. § 1491(b)(1), a plaintiff must show that it is an "interested party" who suffered prejudice from a significant procurement error. *E.g.*, *CliniComp Int'l, Inc. v. United States*, 904 F.3d, 1353, 1358 (Fed. Cir. 2018); *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

Interested parties are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract." *Weeks Marine*, 575 F.3d at 1359 (quoting *American Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)); *accord CliniComp*, 904 F.3d at 1358; *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014) (quoting *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013)). Veteran Shredding was an actual bidder. *See, e.g.*, AR 863 (summarizing offers received). The salient question then becomes whether it had a direct economic interest.

The government argues that a direct economic interest requires showing a "substantial chance" at winning the contract. Def.'s Cross-Mot. at 8, 12-13; Def.'s Reply at 3. As the government would have it, because two other technically acceptable proposals were lower than that of Veteran Shredding and Veteran Shredding's allegations would not undermine those lower bids, if the court set aside the cancellation, VA presumably would award the contract to someone other than Veteran Shredding. Def.'s Cross-Mot. at 8, 12-14; Def.'s Reply at 3; *see also* AR 863, 1127-29, 1163-65, 1202-04.

Veteran Shredding nonetheless argues that in a pre-award context, "the 'substantial chance' test does not apply." Pl.'s Reply at 4. Rather, Veteran Shredding avers that it need only show "a non-trivial competitive injury which can be redressed by judicial relief" to demonstrate a direct economic interest. *Id*. at 3 (quoting *Weeks Marine*, 575 F.3d at 1360). The non-trivial competitive injury it cites is "the loss of a federal contract for which it was a prospective bidder submitting a reasonable price." *Id*. at 4. And, if the VA re-solicits without the "service-disabled" qualifier, Veteran Shredding must then re-compete against a larger pool of bidders, whether VOSBs or small-businesses in general. *Id*. at 4 n.2.

To show a direct economic interest, courts have used either the "substantial chance" of award standard or the less rigorous "non-trivial competitive injury" standard. Ordinarily, the choice between these standards turns on whether the protest is pre-award or post-award, but the question can also arise whether there is sufficient factual development in a pre-award protest to apply the primary "substantial chance" standard. *E.g.*, *Orion Tech.*, 704 F.3d at 1348-49 ("*Weeks Marine* [] set out an *exception* to the general standing test [of substantial chance] in the case of *pre-bid*, pre-award protests. . . ," but ultimately finding in that post-proposal,

6

preevaluation case an "adequate factual predicate to [use] the traditional 'substantial chance' standard.") (emphasis added); *Veterans Elec., LLC v. United States*, 138 Fed. Cl. 781, 788 (2018) (same); *Omran Holding Grp. v. United States*, 128 Fed. Cl. 273, 280, 284 (2016) (applying the "substantial chance" standard to a pre-award protest where an offeror's proposal was excluded as nonresponsive); *see also Acetris Health, LLC v. United States*, 138 Fed. Cl. 579, 593-95 (2015) (listing several cases "in which the 'substantial chance' test has been applied in pre[-]award bid protests").  *But see, e.g.*, *System Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (2012) (commenting that *Weeks Marine* "reject[ed] the proposition that the 'substantial chance' requirement applies outside of the postaward context."); *Cleveland Assets, LLC v. United States*, 132 Fed. Cl. 264, 273 (2017) (applying the "non-trivial competitive injury" standard to a pre-award protest); *SOS Int'l LLC v. United States*, 127 Fed. Cl. 576, 586 (2016) ("A protestor must demonstrate prejudice [through a non-trivial competitive injury] to prove a direct economic interest in a pre-award bid protest matter.").

Given these precedents, Veteran Shredding errs in asserting that the "non-trivial competitive injury" standard governs all pre-award protests.  Instead, that standard provides an alternative to the primary "substantial chance" standard when there is a lack of a bid or other factual basis to evaluate a protestor's chance at an award.  A number of pre-award cases have applied the "substantial chance" standard, post-bid.  *E.g.*, *Orion Tech.*, 704 F.3d 1344 (post-bid); *Veterans Elec.*, 138 Fed. Cl. 781 (post-bid); *Omran Holding Grp.*, 128 Fed. Cl. 273 (post-bid).  Therefore, in light of the factual post-bid posture of this case, Veteran Shredding must demonstrate "a substantial chance of winning the contract" even though it is protesting pre-award.

The factual setting distinguishes this protest from that in *Weeks Marine*.  Weeks protested the Army's decision to change procurement methods, arguing the change lacked a rational basis. *Weeks Marine*, 575 F.3d at 1356, 1360-61.  The court noted the difficulty in applying the "substantial chance" test pre-award to show prejudice because, "*in a case such as this*, there have been neither bids/offers, nor a contract award [and] [h]ence, there is no factual foundation for a 'but for' prejudice analysis."  *Id.* at 1361 (emphasis added).  But because "Weeks [must] make a showing of *some prejudice*," the court allowed it to do so by demonstrating a "non-trivial competitive injury."  *Id.* at 1361-62 (emphasis in original).

Evaluating prejudice can be important in applying the "substantial chance" standard.  A protestor's substantial chance at an award may only emerge when considering the potential effect of the government's alleged errors.  *See, e.g.*, *Hyperion*, 115 Fed. Cl. at 550 (finding that the fourth highest bidder had standing when the protest alleged that competitors on the face of their bids would not comply with a subcontracting limitation).  Despite the potential relevance of prejudice in determining substantial chance, direct economic interest should still be evaluated separately from prejudice.  *E.g.*, *CliniComp,* 904 F.3d at 1358-59 ("Although the inquires may be similar, prejudice must be shown either as part of, or in addition to, showing a direct economic interest," noting that otherwise even a minor procurement error could be prejudicial so long as the party was an interested party) (citations omitted); *Universal Marine Co. K.S.C. v. United States*, 120 Fed. Cl. 240, 248 (2015) ("[A] proper standing inquiry must not conflate the requirement of 'direct economic interest' with prejudicial error.") (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009)).  A party can have a substantial chance at

7

award and still not be prejudiced where, *e.g.*, the error is minor or affects all parties equally. *See, e.g.*, *CliniComp,* 904 F.3d at 1358; *Labatt*, 577 F.3d at 1380-81. But, a party cannot be prejudiced unless it first has a substantial chance of award.

The VA received five offers for its lowest priced technically acceptable solicitation, three of which were technically-acceptable. Veteran Shredding was among the group which had technically acceptable proposals, but its price was the highest of that trio. And, the claims of error it makes in this protest focus primarily on VA's price reasonableness determination, which allegation of error would affect each of the three technically acceptable proposals equally. Had the VA found Veteran Shredding's offer fair and reasonable, it would have also found the two lower bids fair and reasonable. *See*, *e.g.*, *Universal Marine*, 120 Fed. Cl. at 248-49 (finding no standing when the protest of the fourth highest bidder did not challenge the eligibility of two lower-priced offers). In sum, because Veteran Shredding offered the third highest technically acceptable bid, the court concludes that Veteran Shredding lacked a substantial chance at award. Therefore, Veteran Shredding cannot show a direct economic interest in the protest, and thus cannot be an interested party.

## CONCLUSION

For the foregoing reasons, the court finds that Veteran Shredding lacks standing to protest the cancellation of the pertinent solicitation. Accordingly, the government's motion to dismiss is GRANTED. Veteran Shredding's and the government's motions for judgment on the administrative record are therefore both DENIED as moot. The clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge